## STATE OF CONNECTICUT *v.* BONNIE JEAN FORESHAW
## (13304)

PETERS, C. J., HEALEY, GLASS, HULL and SANTANIELLO, Js.

Argued January 9—decision released April 10, 1990

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *James E. Thomas,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

HULL, J. A jury found the defendant, Bonnie Jean Foreshaw, guilty of murder in violation of General Statutes § 53a-54a (a),[1] of carrying a pistol without a permit in violation of General Statutes § 29-35,[2] and of tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1).[3] The trial court thereupon sentenced her to a total effective sentence of forty-five years incarceration. On appeal, the defendant claims that: (1) the trial court erred in improperly

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28."

[3] General Statutes § 53a-155 provides in pertinent part: "(a) A person is guilty of tampering with . . . physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding."

instructing the jury on the affirmative defense of extreme emotional disturbance; (2) the trial court erred in improperly instructing the jury on an element of the crime of tampering with physical evidence; and (3) the evidence presented was insufficient to support the verdict on the charge of tampering with physical evidence. We find no error.

The jury could reasonably have found the following facts. On the evening of March 26, 1986, Joyce Amos attended a dance at the Jamaican Progressive League, a club located on Albany Avenue in Hartford. At approximately midnight, Amos arranged to get a ride home from an acquaintance, Hector Freeman, and Freeman's friend, Elmer Pickett. As they left the club, Freeman, who needed some cigarettes, asked Pickett to meet him across the street at a twenty-four hour gas station and convenience store.

Freeman then walked toward the store and encountered the defendant as he was crossing the street. When Freeman greeted her with the words "Hello, Dred,"[4] the defendant began shouting obscenities at him, claiming that he had "disrespected her." The defendant continued to swear at Freeman, prompting him to respond in similar language. Meanwhile, Pickett had driven his car into the parking lot in front of the store and Amos had gotten out of the car to join Freeman. Both Amos and Freeman then proceeded into the store.

Upon walking out of the store, Amos approached the defendant and began talking to her. Freeman soon joined Amos and listened as Amos admonished the defendant for using such vile language. Undaunted, the defendant continued her tirade and eventually disappeared behind a nearby building. She emerged again

---

[4] Testimony indicated that the defendant was a Rastafarian and wore her hair in long dredlocks.

quickly, however, and pulled from under her coat a .38 caliber pistol. The defendant then screamed at Amos to get out of the way because she intended to kill someone. Almost immediately thereafter, the defendant fired the shot that killed Amos.

The defendant fled from the scene in her automobile, but was arrested within a short time after the shooting. The arresting officer found a .38 caliber bullet on the floor of the automobile. Upon police inquiry about the location of the gun, the defendant responded that, while driving her car, she had thrown the gun out of the car window. The defendant then retraced her route with the police in an attempt to find the gun, but eventually became confused and upset and discontinued her search. The gun was never recovered.

At trial, the defendant took the witness stand in her defense and gave testimony concerning the events that had transpired before, during and after the shooting incident. She explained that on the night of March 26, 1986, she had stopped at the Jamaican Progressive League for a drink. While she was at the club, she had been insulted and embarrassed by Freeman after he unsuccessfully had offered to buy her a drink. She immediately decided to leave the club, but was followed to her car by Freeman and Amos. The defendant testified that, although Freeman did not block her from getting into her car, his presence had threatened her. The defendant claimed further that she had grabbed her gun and deliberately pulled its trigger in response to Freeman's movements toward her. Upon seeing Amos fall, the defendant immediately drove away and discarded the gun en route so that she would not be caught with it.

Although the defendant admitted at trial that she had fired the fatal shot, she claimed that she had done so while under the influence of extreme emotional distur-

bance. In support of this affirmative defense, the defendant presented expert testimony from Anne E. Price, a psychiatrist. Price testified that the defendant had experienced an abusive childhood and had endured two abusive marriages. Price explained that these experiences had affected the defendant's state of mind at the time of the shooting. She further explained that the defendant suffered from posttraumatic stress disorder, a condition similar to that suffered by certain Vietnam veterans. The condition is caused by a traumatic event, such as persistent abuse, not within the range of usual human experiences. The trauma may cause a person to overreact to relatively benign events or to respond to a situation of danger in an irrational way. Price testified that when the defendant was confronted by Freeman, she had become scared that he would beat her as her husbands had done in the past. Consequently, the defendant became so overwhelmed by panic that she reacted irrationally and impulsively. According to Price, the defendant fired the gun before she could really think about what she was doing.

## I

The defendant first claims that the trial court erred in improperly instructing the jury on the affirmative defense of extreme emotional disturbance. The basis of the defendant's claim is the court's inclusion in its charge of the following sentence: "Now, to determine whether the defendant has established the affirmative defense of extreme emotional disturbance by a preponderance of the evidence as a mitigation of murder, to manslaughter in the first degree, *you must find first, that the emotional disturbance is not a mental disease or defect that rises to the level of insanity, as defined by our statutes.*" (Emphasis added.) The defendant argues that the court's instruction misstated the controlling law, confused the jury, improperly added to the

defendant's burden of proof by requiring that the defendant prove that her level of mental disease or defect did not rise to the level of insanity, and failed to include a statutory definition of insanity.

The defendant concedes that she did not except at trial to the portion of the charge she now claims as error; see Practice Book § 852;[5] but maintains that her claim is reviewable under both *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and the plain error rule of Practice Book § 4185. We do not agree.

We turn first to the defendant's argument that because the court's instruction violated her due process right to establish a defense; *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); her challenge to that instruction warrants review under *State* v. *Evans,* supra. This court recently restated the *Evans* guidelines for dealing with alleged constitutional violations that are raised for the first time on appeal. *State* v. *Golding,* 213 Conn. 233, 238–42, 567 A.2d 823 (1989). In *Golding,* we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

[5] Practice Book § 852 provides in pertinent part: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered."

We conclude that the defendant's constitutional right to establish a defense was not violated.

In *State* v. *Preyer,* 198 Conn. 190, 502 A.2d 858 (1985), this court was faced with an unpreserved challenge to a clearly erroneous affirmative defense instruction. We held, inter alia, that a trial court's failure independently to instruct the jury on an affirmative defense supported by the evidence at trial does not rise to the level of a constitutional violation. Id., 196–97. In support of that holding, we stated that *"Washington* v. *Texas,* supra, 19, does not establish an unqualified constitutional right to correct jury instructions on any defense the defendant may have. The only relevant issue therein decided was the applicability, in state court proceedings, of the sixth amendment right of a criminal defendant to have compulsory process for obtaining witnesses in his favor." Id., 197 n.9. "Implicit in [our] decision [in *Preyer*] was the conclusion that claims of error pertaining to the inadequacy of instructions on an affirmative defense do not raise a constitutional question." *State* v. *Suggs,* 209 Conn. 733, 751, 553 A.2d 1110 (1989). Accordingly, pursuant to *State* v. *Golding,* supra, and *State* v. *Evans,* supra, the defendant cannot prevail on her unpreserved challenge to the court's affirmative defense instruction.

The defendant likewise cannot succeed in her attempt to raise this claim under the plain error rule. We decline to review the defendant's claim as plain error, because we are not convinced that there was any manifest injustice under all the circumstances of the case. Practice Book § 4185 provides that this court "may in the interests of justice notice plain error not brought to the attention of the trial court." "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88,

502 A.2d 388 (1985). While it may well be that the instruction at issue was poorly worded, we cannot say that the inclusion of the challenged language, viewed in the context of the entire jury charge,[6] "constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of [her] trial." Id., 88. Accordingly, there is no plain error in this case.[7]

II

The defendant next assigns error to the trial court's instruction on the crime of tampering with physical evidence. General Statutes § 53a-155 (a) provides in pertinent part: "A person is guilty of tampering with . . . physical evidence if, believing that an official proceeding *is pending, or about to be instituted,* he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding." (Emphasis added.) The trial court included the following language in its charge to the jury: "If you find that the State has proved beyond a reasonable doubt that the defendant did conceal this gun . . . with the purpose of impairing its availability in this trial, or an official proceeding, which *would be taking place at some later time—*if you find that

[6] The defendant does not claim error in any other portion of the charge concerning the affirmative defense of extreme emotional disturbance.

[7] The defendant argues that plain error review is appropriate because we have in the past reviewed unpreserved claims challenging the instructions given the jury on an affirmative defense. *State* v. *Suggs,* 209 Conn. 733, 750–52, 553 A.2d 1110 (1989); *State* v. *Preyer,* 198 Conn. 190, 199, 502 A.2d 858 (1985). We find those cases to be distinguishable from the present case. In *Preyer,* the trial court overlooked a statutory provision, the language of which required the court to instruct the jury that the affirmative defense of cohabitation was applicable to the crime with which the defendant was charged. *State* v. *Preyer,* supra. In *Suggs,* the court failed to instruct the jury pursuant to General Statutes § 53a-12 (b) that the defendant bears the burden of establishing an affirmative defense by a preponderance of the evidence. *State* v. *Suggs,* supra, 752. The present case does not involve a misstatement of the law arising from the trial court's failure to give an instruction clearly required by a statutory provision.

beyond a reasonable doubt, then you can find the defendant guilty of tampering with physical evidence . . . ." (Emphasis added.) The defendant contends that the phrase "would be taking place at some later time" differs significantly from the language of § 53a-155 (a) and thus misled the jury concerning an element of the crime charged.

The defendant again concedes that she did not object at trial to the portion of the charge she now claims as error. Because, however, a trial court's failure to submit to the jury the essential elements of the offense charged would implicate the fundamental constitutional rights of the defendant; *State* v. *Cobb,* 199 Conn. 322, 326, 507 A.2d 457 (1986); the defendant argues that pursuant to *State* v. *Evans,* supra, review of her claim is warranted. We are not persuaded that, under the facts here presented, the defendant suffered a constitutional violation. See *State* v. *Golding,* supra, 239–40.

"We have often said that the charge should be read as a whole. 'It is well established . . . that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812 (1985); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984); *State* v. *Hines,* 187 Conn. 199, 209, 44 A.2d 314 (1982). The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980); *State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and not critically dissected in a microscopic search for possible error. *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203 (1977).' " *State* v. *Silano,* 204 Conn. 769, 773, 529 A.2d 1283 (1987), quoting *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d

466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

A review of the jury charge concerning the crime of tampering with physical evidence reveals that the trial court articulated the exact language of § 53a-155 (a) three times. First, the court began its discussion of the tampering charge by reading the information which alleged, inter alia, that "the defendant, believing that an official proceeding was *about to be instituted,* removed and concealed a handgun, so as to make said handgun unavailable in such proceeding . . . ." (Emphasis added.) The court then proceeded to read verbatim the language of § 53a-155 (a) (1). Immediately thereafter, the court reiterated: "And an official proceeding is any proceeding *pending, or about to be instituted,* including Judicial, at which an official is authorized to take evidence under oath." (Emphasis added.) It was after these instructions that the court used the challenged language to describe an "official proceeding." The isolated phrase of which the defendant complains, deviated, in a minor way, from the language of the statute, but, nevertheless, preserved the meaning and future tense of § 53a-155 (a). Under such circumstances, the court's use of the challenged language could not reasonably have misled the jury concerning an element of the crime of tampering with physical evidence, and accordingly did not rise to the level of a constitutional violation.

### III

Finally, the defendant challenges the sufficiency of the evidence presented at trial with respect to the charge of tampering with physical evidence. General Statutes § 53a-155 (a) (1). At the close of the state's case-in-chief and again at the close of the defense case, the defendant moved for judgment of acquittal on the tampering charge. Both motions were denied by the

court. On appeal, the defendant renews her claim that there was insufficient evidence to sustain the verdict on the charge of tampering with physical evidence. We are not persuaded that the evidence was insufficient to support the defendant's conviction on that charge.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. 'We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . ' State v. Sinclair, 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited." State v. Rollinson, 203 Conn. 641, 665–66, 526 A.2d 1283 (1987).

With respect to the tampering charge, the state presented the following evidence. The defendant fired a gunshot that fatally wounded Amos, an act witnessed by several individuals. When Amos fell to the ground, the defendant fled the scene in her automobile. The defendant told arresting police officers that she had thrown the gun out of the car window as she was driving away from the scene. Finally, the defendant herself testified that she had discarded the gun so that she would not be caught with it.

The defendant argues that the testimony outlined above was not sufficient to support her conviction of tampering with physical evidence. In particular, the defendant argues that because she discarded the gun prior to any contact with law enforcement officers or the judicial system, she could not have believed an official proceeding was "about to be instituted." In support of this contention, the defendant argues that the

language of § 53a-155 (a) connotes temporal proximity between the alleged act and the official proceeding. The defendant argues further that even if the state proved that she had acted with the intent to make the gun unavailable *to the police,* such an intent would not warrant conviction under the language of § 53a-155 (a) (1). We do not agree. It is true that at the time the defendant discarded the gun, no official proceeding had in fact been instituted. The statute, however, speaks to that which is readily apt to come into existence or be contemplated and thus plainly applies to the official proceeding arising out of such an incident. The crucial role police involvement would play in that process cannot be disputed.

"[I]t is our function to 'review the evidence and construe it as favorably as possible with a view toward sustaining the conviction, and then [to] determine whether, in light of the evidence, the trier of fact could reasonably have reached the conclusion it did reach. *State* v. *Rossier,* 175 Conn. 204, 207, 397 A.2d 110 (1978).' *State* v. *McClary,* 207 Conn. 233, 249, 541 A.2d 96 (1988)." *State* v. *Robinson,* 213 Conn. 243, 257, 567 A.2d 1173 (1989). We cannot say that from the evidence presented, the jury could not reasonably have concluded that the defendant was guilty of tampering with physical evidence beyond a reasonable doubt.

There is no error.

In this opinion the other justices concurred.