BONNIE JEAN FORESHAW *v.* COMMISSIONER OF
CORRECTION
(AC 16276)

Schaller, Hennessy and Dupont, Js.

Argued November 10, 1997—officially released March 17, 1998

*Diane Polan*, with whom, on the brief, was *John R. Williams*, for the appellant (petitioner).

*Rita M. Shair*, assistant state's attorney, with whom were *Kevin T. Kane*, state's attorney, and, on the brief, *John Dropick*, former assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The petitioner appeals from the trial court's denial of her petition for a writ of habeas corpus. She claims that the trial court abused its discretion in denying certification to appeal on three of the four issues raised in her petition and improperly denied her ineffective assistance of counsel and equal protection claims. We conclude that the dispositive issue is whether the trial court improperly rejected the petitioner's claim of ineffective assistance of trial counsel.[1]

---

[1] As to the claim of improper denial of certification, we note that the trial court did not specifically deny any of the petitioner's claims, but merely focused on the fourth issue as one that met the statutory criteria for certification. While the trial court need not have distinguished the issues as being questions of fact or questions of law, the trial court carried out its statutory duties in determining whether an issue constituted a "question . . . which ought to be reviewed by the court having jurisdiction . . . ." General Statutes § 52-470 (b).

Although the petitioner claims that the trial court applied an "incorrect standard" in ascertaining whether trial counsel was ineffective, the petitioner's argument does not contain any claim that incorrect law was applied. Rather, her argument relates to the dispositive issue that the trial court *incorrectly analyzed* the ineffective assistance of counsel claim in terms of fact and law. We therefore address those claims in the course of discussing the dispositive issue.

We affirm the judgment of the habeas court dismissing the petition.

The following facts relevant to this appeal are recited in our Supreme Court's decision in *State* v. *Foreshaw*, 214 Conn. 540, 572 A.2d 1006 (1990). "On the evening of March 26, 1986, Joyce Amos attended a dance at the Jamaican Progressive League, a club located on Albany Avenue in Hartford. At approximately midnight, Amos arranged to get a ride home from an acquaintance, Hector Freeman, and Freeman's friend, Elmer Pickett. As they left the club, Freeman, who needed some cigarettes, asked Pickett to meet him across the street at a twenty-four hour gas station and convenience store.

"Freeman then walked toward the store and encountered the [petitioner] as he was crossing the street. When Freeman greeted her with the words 'Hello, Dred,'[2] the [petitioner] began shouting obscenities at him, claiming that he had 'disrespected her.' The [petitioner] continued to swear at Freeman, prompting him to respond in similar language. Meanwhile, Pickett had driven his car into the parking lot in front of the store and Amos had gotten out of the car to join Freeman. Both Amos and Freeman then proceeded into the store.

"Upon walking out of the store, Amos approached the [petitioner] and began talking to her. Freeman soon joined Amos and listened as Amos admonished the [petitioner] for using such vile language. Undaunted, the [petitioner] continued her tirade and eventually disappeared behind a nearby building. She emerged again

---

We need not address the equal protection claim raised under article first of the Connecticut constitution because this claim is raised, essentially without analysis, for the first time on appeal. See *Giannotti* v. *Warden*, 26 Conn. App. 125, 126 n.1, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992); *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993).

[2] "Testimony indicated that the defendant was a Rastafarian and wore her hair in long [dreadlocks]." *State* v. *Foreshaw*, supra, 214 Conn. 542 n.4.

quickly, however, and pulled from under her coat a .38 caliber pistol. The [petitioner] then screamed at Amos to get out of the way because she intended to kill someone. Almost immediately thereafter, the [petitioner] fired the shot that killed Amos.

"The [petitioner] fled from the scene in her automobile, but was arrested within a short time after the shooting. . . .

"At trial, the [petitioner] took the witness stand in her defense and gave testimony concerning the events that had transpired before, during and after the shooting incident. She explained that on the night of March 26, 1986, she had stopped at the Jamaican Progressive League for a drink. While she was at the club, she had been insulted and embarrassed by Freeman after he unsuccessfully had offered to buy her a drink. She immediately decided to leave the club, but was followed to her car by Freeman and Amos. The [petitioner] testified that, although Freeman did not block her from getting into her car, his presence had threatened her. The [petitioner] claimed further that she had grabbed her gun and deliberately pulled its trigger in response to Freeman's movements toward her. Upon seeing Amos fall, the [petitioner] immediately drove away and discarded the gun en route so that she would not be caught with it.

"Although the [petitioner] admitted at trial that she had fired the fatal shot, she claimed that she had done so while under the influence of extreme emotional disturbance. In support of this affirmative defense, the [petitioner] presented expert testimony from Anne E. Price, a psychiatrist. Price testified that the [petitioner] had experienced an abusive childhood and had endured two abusive marriages. Price explained that these experiences had affected the [petitioner's] state of mind at the time of the shooting. She further explained that the

[petitioner] suffered from posttraumatic stress disorder, a condition similar to that suffered by certain Vietnam veterans. The condition is caused by a traumatic event, such as persistent abuse, not within the range of usual human experiences. The trauma may cause a person to overreact to relatively benign events or to respond to a situation of danger in an irrational way. Price testified that when the [petitioner] was confronted by Freeman, she had become scared that he would beat her as her husbands had done in the past. Consequently, the [petitioner] became so overwhelmed by panic that she reacted irrationally and impulsively. According to Price, the [petitioner] fired the gun before she could really think about what she was doing." Id., 542–44.

The following additional facts relevant to the ineffective assistance of counsel claim were found by the habeas court. The petitioner was represented at trial by attorney Dennis O'Toole from the office of the public defender. O'Toole graduated from law school in 1983 and was admitted to practice law in Connecticut that year. He joined the public defender's office in 1985. Prior to trial, O'Toole met with the petitioner on several occasions, reviewed all available police reports concerning this incident and filed numerous pretrial motions concerning the admissibility of certain evidence and the establishment of fair procedures for the conduct of the trial. In addition, O'Toole interviewed several witnesses, reviewed witnesses' voluntary statements, studied the report and evaluation of the petitioner performed by Donald R. Grayson, a psychiatrist, and met with Grayson to discuss the report and the specifics of the petitioner's mental condition.

O'Toole also sought a second psychiatric opinion regarding the petitioner's mental state from Price. Price concluded that the petitioner's conduct was influenced by posttraumatic stress disorder. O'Toole acquainted

himself with the specific causes and effects of posttraumatic stress disorder by conducting research at the University of Connecticut Medical Center. O'Toole believed that the petitioner suffered from battered woman's syndrome. O'Toole considered the use of the defense of self-defense after investigating the circumstances surrounding the crime and speaking with the petitioner, but decided to emphasize the strategy of a lesser included offense based on the petitioner's extreme emotional disturbance at the time of the shooting.

After a jury trial, the petitioner was found guilty of the crimes of murder, carrying a pistol without a permit and tampering with evidence. The trial court sentenced her to a total effective sentence of forty-five years imprisonment. On direct appeal, our Supreme Court affirmed the conviction. Id., 540.

The petitioner filed a petition for a writ of habeas corpus in April, 1994. After a trial to the habeas court in April, 1996, the petition was denied. Following the decision by the habeas court, the petitioner filed a petition for certification to appeal that raised four issues: (1) whether her trial counsel failed to meet the "recognized standard of competency" in his performance in violation of the sixth and fourteenth amendments to the United States constitution; (2) whether trial counsel improperly failed to present a defense of self-defense; (3) whether such defense probably would have been successful; and (4) whether the habeas court applied an "incorrect standard" in assessing her sixth amendment claims.

Pursuant to General Statutes § 52-470 (b),[3] the habeas court acted on the petition for certification as follows:

---

[3] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions

"Questions 1, 2, and 3 are fact questions and have been addressed by the court in its memorandum of decision . . . . Question 4 is a matter of law and the trial court grants certification incident thereto." This appeal followed.

The dispositive issue in this appeal is whether the petitioner was denied the effective assistance of trial counsel because her attorney failed to present the defense of self-defense at trial. The petitioner argues that her attorney failed to view the events that transpired on the night in question from her perspective. She claims specifically that because she suffered from battered woman's syndrome, her belief that she was facing imminent danger from Freeman was reasonable and would support a self-defense argument. We are not persuaded.

To review properly an ineffective assistance of counsel claim, we must apply the two part test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on this claim, the petitioner must demonstrate both (1) deficient performance by her attorney and (2) actual prejudice. Id. Applying this test to the facts of this case, we conclude that the petitioner has failed to prove deficient performance by her trial attorney. As a result, we need not consider the prejudice prong.

While it may be true that the petitioner believed that she was in imminent danger from Freeman, she had a duty to retreat pursuant to General Statutes § 53a-19 (b)[4] before using deadly force in self-defense. A review

the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[4] General Statutes § 53a-19 (b) provides in relevant part that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety

of the facts in this case indicates that the petitioner had an opportunity to retreat from her perceived attacker and that in fact she did retreat initially. She walked away from Freeman and the victim, went to her car parked some distance away, obtained her gun and returned to the scene. There was evidence that the petitioner screamed at Amos to move away because she intended to kill someone. She then fired the shot that killed Amos.

While the petitioner correctly asserts that the proper test to determine the reasonableness of a defendant's belief in the necessity of using deadly physical force is an objective-subjective test; see *State* v. *Carter*, 232 Conn. 537, 546, 656 A.2d 657 (1995); she fails to recognize the importance of the duty to retreat requirement. Even assuming, arguendo, that the petitioner's belief that Freeman was about to threaten her with the use of deadly force was reasonable given her mental state as a battered woman suffering from posttraumatic stress disorder, she had a duty to retreat from the conflict to avoid the use of deadly physical force. In this case, she had the opportunity to retreat but after retreating briefly, she obtained her gun and returned to the scene of the conflict to fire the fatal shot. In so doing, she failed to satisfy the duty to retreat requirement. Her trial counsel correctly determined that the facts did not support this defense and correctly decided not to pursue this strategy at trial.

The petitioner points to several psychiatric and legal experts who testified at the habeas hearing, and could have testified at her trial regarding the reasonableness of the petitioner's belief under the circumstances, given her posttraumatic stress disorder condition. According

(1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling . . . or place of work and was not the initial aggressor . . . ."

to their testimony at the habeas hearing, these experts examined the petitioner, reviewed the circumstances surrounding Amos' death and concluded that there existed a strong case of self-defense. One element that was noticeably lacking from these experts' proffered testimony, however, was the satisfaction of the duty to retreat. These experts did not offer opinions as to whether the petitioner had an opportunity to retreat or believed that she could have retreated to complete safety as § 53a-19 (b) requires. We conclude, therefore, that their proffered testimony was irrelevant to the crucial issue in this case: the petitioner's ability to satisfy the duty to retreat prior to using deadly physical force.

We conclude that the habeas court's determination that the petitioner failed to prove that her counsel's performance was deficient in this case for failure to present the defense of self-defense was warranted.

The judgment is affirmed.

In this opinion the other judges concurred.