## STATE OF CONNECTICUT *v.* RICHARD POMMER
### (AC 27171)

Flynn, C. J., and DiPentima and Pellegrino, Js.

Argued March 13—officially released September 30, 2008

*Laila M. G. Haswell,* assistant public defender, for the appellant (defendant).

*Susan C. Marks,* supervisory assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Kevin Doyle,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Richard Pommer, appeals from the judgment of conviction, rendered after a jury trial, of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), one count of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2) and one count of tampering with a witness in violation of General Statutes § 53a-151 (a). The defendant claims that the evidence was insufficient to sustain his conviction of tampering with a witness. Specifically, the defendant first claims that the defendant's alleged interference with a witness must relate to his interference with the witness' testimony, not to discussions with the police. In his reply brief, he later refines this insufficiency argument by stating that the intent required must be an intent to prevent a witness from testifying at trial and possibly assisting the state in obtaining a conviction. Second, the defendant claims there was no evidence that when the alleged threat was made, he believed that an official proceeding was pending or about to be instituted. Finally, he contends that the testimony with which he allegedly had interfered must have been testimony given under oath because General Statutes § 53a-146 (1) defines "official proceeding" by limiting it to a proceeding in which evidence may be taken under oath, and there was insufficient evidence to establish this. We affirm the judgment of the trial court.

The defendant pleaded not guilty and, after a jury trial, he was convicted of all charges, including the one count of tampering with a witness, which is the subject of this appeal. The defendant was sentenced to eighteen

years incarceration, execution suspended after twelve years, and three years probation. This appeal followed.

The following facts, which might reasonably have been found by the jury, are relevant to our disposition of the defendant's appeal. On October 19, 2003, two individuals were robbed in New Haven by the defendant, Chaz Poole and James Draughn. Melissa Fragola, the girlfriend of Poole, drove the getaway car. New Haven police were able to obtain Fragola's photograph from a videotape showing her using one of the victim's stolen credit cards at a gasoline station and disseminated copies to local television news bureaus. When Fragola saw her photograph on a news broadcast, she informed Poole and indicated that she would turn herself in to the police. When Fragola went to the Hamden police station with Poole, she was sent back home. The following day, New Haven police officers came to her residence and brought her to their station where she provided a taped statement. On her second and third visit to the police station, Fragola selected the defendant's and Draughn's photographs, identifying them as participants in the robbery.

After Fragola's photograph had been broadcast, the defendant telephoned Poole and informed him of the broadcasting and that Fragola had turned herself in to the police and implicated the participants in the robbery. The defendant inquired of Poole as to whether he also would go to the police. When Poole replied in the affirmative, the defendant was not happy and indicated to Poole that he loved him like a brother, but if Poole went to the police, it would be "[Poole's] ass."

I

We first discuss reviewability of the claims. At the close of the state's case, the defendant moved for a judgment of acquittal on the tampering charge on the ground that his statement to Poole did not constitute

a threat. The court denied the defendant's motion. At the close of his case, the defendant renewed his motion for a judgment of acquittal on the tampering count. On appeal, the defendant abandons discussion of whether his statement was a threat and, inter alia, raises an issue not raised at the trial level, which is whether he had the required intent.

The defendant contends that his unpreserved claim of insufficiency of the evidence is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree to review the defendant's claim because any defendant who is found guilty on the basis of insufficient evidence has been deprived of a constitutional right and is entitled to review whether or not the claim was preserved at trial. See *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State* v. *Padua*, 73 Conn. App. 386, 392, 808 A.2d 361 (2002), rev'd in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005).

II

We next turn to all of the defendant's claims that there was insufficient evidence to permit the jury to find beyond a reasonable doubt that he tampered with a witness. At the outset, we observe that the defendant's arguments in his reply brief have shifted from those in his main brief. The defendant maintained in his principal brief that a "defendant's interference with the witness must relate to his or her testimony, not to discussions with the police." He also maintained that there was "no evidence on the record" that he believed that " 'an official proceeding was pending or about to be instituted.' " In his reply brief, the defendant, for the first time, refers to intent and argues that a defendant's "intent must be to prevent a witness from testifying at trial and possibly assisting the state in obtaining a conviction." He goes on to state that "[t]he intent to

prevent a witness from speaking to the police is not sufficient under the statute. This is because of the use of the words " 'testify' " or " 'testimony' " in the second element of the statute."

Review of any claim of insufficiency of the evidence introduced to prove a violation of a criminal statute must necessarily begin with the skeletal requirements of what necessary elements the charged statute requires to be proved. Such a review necessarily involves statutory construction. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996).

Once analysis is complete as to what the particular statute requires to be proved, we then review the evidence in light of those statutory requirements. Our review standard is well settled. "In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Foreshaw*, 214 Conn. 540, 550, 572 A.2d 1006 (1990).

We begin by addressing the defendant's claims about what the statute requires to be proved by examining the language of the witness tampering statute. Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, *believing that an official proceeding is pending or about to be instituted,* he *induces or attempts to induce a witness* to testify falsely, *withhold*

*testimony*, elude legal process summoning him to testify or absent himself from any official proceeding." (Emphasis added.)

We hold that as applied to the evidence in this case, the first necessary element of the crime is that the defendant believed that an official proceeding was pending or about to be instituted and that the person tampered with was likely to be a witness. An official proceeding includes any proceeding held or that may be held before any judicial official authorized to take evidence under oath. The second element is that the defendant induced or attempted to induce a witness to withhold testimony. We set forth our analysis supporting this holding. "It is a basic tenet of statutory construction that the legislature does not intend to enact meaningless provisions. . . . Every word and phrase [in a statute] is presumed to have meaning, and we do not construe statutes so as to render certain words and phrases surplusage." (Citation omitted; internal quotation marks omitted.) *Remax Right Choice* v. *Aryeh*, 100 Conn. App. 373, 382, 918 A.2d 976 (2007).

"[W]e keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result." (Internal quotation marks omitted.) *Fine Homebuilders, Inc.* v. *Perrone*, 98 Conn. App. 852, 856, 911 A.2d 1149 (2006), cert. granted on other grounds, 282 Conn. 901, 918 A.2d 888 (2007) (appeal withdrawn October 24, 2007). "[W]e presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) Id.

General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of

the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." Pursuant to the plain meaning rule, General Statutes § 1-2z, "the meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [W]e seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . ." (Internal quotation marks omitted.) *State* v. *Winer*, 286 Conn. 666, 676, 945 A.2d 430 (2008).

The text of § 53a-151 (a) prohibits tampering with a witness not just when a person believes that "an official proceeding is pending" but also when such a proceeding is "about to be instituted . . . ." General Statutes § 53a-151 (a). General Statutes § 53a-146, which defines terms in General Statutes §§ 53a-151 (a) and 53a-155 (a), defines "official proceeding" to include any proceeding "held or which may be held before any . . . judicial . . . agency or official authorized to take evidence under oath . . . ." General Statutes § 53a-146 (1). Our Supreme Court has stated that the statute applies to "any conduct that is intended to prompt a witness to testify falsely or refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent." *State* v. *Cavallo*, 200 Conn. 664, 668, 513 A.2d 646 (1986). The defendant argues in effect that a court case actually had to be pending and that the statute's reference to testimony refers necessarily only

to testimony under oath at a trial or other official proceeding and that importuning a witness to withhold statements to police prior to trial is not within the prohibition of the statute. We reject such an interpretation.

In construing § 53a-151 (a)'s plain language, we first observe that no official proceeding actually has to exist; the statutory language requires only that the person tampers, "believing that an official proceeding is pending, or about to be instituted . . . ." General Statutes § 53a-151 (a). Because "the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results," we need not refer to "extratextual evidence of the meaning of the statute . . . ." General Statutes § 1-2z. Presuming that the legislature intends sensible results from its statutes and following the rubric that no statutory word or phrase should be deemed insignificant, we conclude that the defendant's claim would render the statutory language "about to be instituted" meaningless surplusage and would be contrary to our Supreme Court's holding in *Cavallo*. See *State* v. *Cavallo*, supra, 200 Conn. 668.

"The rule of construction that words in a statute must be construed according to their plain and ordinary meaning [is informed by] the doctrine of [*in pari*] *materia*, under which statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term. . . . [T]he words of a statute are to be construed with common sense." (Internal quotation marks omitted.) R. Williams Jr., "Statutory Construction in Connecticut: An Overview and Analysis," 62 Conn. B.J. 313–14 (1988). "If a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to bizarre results destructive of that purpose, the former should

prevail." (Internal quotation marks omitted.) *State* v. *Burns*, supra, 236 Conn. 23.

Using the rules of *in pari materia*, we review *State* v. *Foreshaw*, supra, 214 Conn. 540, for our Supreme Court's construction of the phrase, "official proceeding is pending, or about to be instituted," as used in § 53a-155 (a), a statute prohibiting tampering with physical evidence. *Foreshaw* is persuasive because our Supreme Court was confronted with a distinct but similar statute. See id., 547. Section 53a-155 (a) contains identical language to § 53a-151 (a), namely, a "belie[f] that an official proceeding is pending, or about to be instituted . . . ." (Internal quotation marks omitted.) Id. Both sections were enacted at the same time, are to be found in part XI of our Penal Code, share a common purpose: "punish[ing] those who interfere with the courts and our system of justice" and have identical definitions. *State* v. *Servello*, 80 Conn. App. 313, 323, 835 A.2d 102 (2003), cert. denied, 267 Conn. 914, 841 A.2d 220 (2004).

In *Foreshaw*, a defendant fired a gunshot, killing a victim and, while fleeing the scene in her automobile, threw the gun she had used in the killing out of the car window so that she would not be caught with it. At the time she threw the murder weapon out of the window, she had no contact with the police or the judicial system in connection with her crime and there had been no arrest, much less a trial. Our Supreme Court held that the evidence was sufficient to permit the jury to find that an official proceeding was "about to be instituted." The court rejected the defendant's claims that the tampering with evidence statute required a temporal proximity between the alleged act and the official proceeding, and merely making evidence "unavailable" was not enough.

Justice Hull, writing for the *Foreshaw* court, opined: "It is true that at the time the defendant discarded the

gun, no official proceeding had in fact been instituted. The statute, however, speaks to that which is readily apt to come into existence or be contemplated and thus plainly applies to the official proceeding arising out of such an incident. The crucial role police involvement would play in that process cannot be disputed." *State* v. *Foreshaw*, supra, 214 Conn. 551. Thus, the Supreme Court concluded that the "official proceeding is pending, or about to be instituted" element of § 53a-155 (a) could be satisfied when the facts support the inference that the defendant reasonably could have contemplated that an official proceeding was likely to arise. See id. We conclude that this interpretation of similar language in *State* v. *Foreshaw*, supra, 551, is persuasive. We conclude that it is enough under the tampering with a witness statute to satisfy the required belief that an official proceeding is "about to be instituted" and is therefore imminent if a defendant, knowing he has been implicated as a participant in a crime, threatens a likely witness to that crime, to withhold evidence from the police, who, as the *Foreshaw* court noted, play a crucial role in the commencement of criminal prosecutions.

The defendant next argues that his "intent must [have been] to prevent a witness from testifying at trial and possibly assisting the state in obtaining a conviction. The intent to prevent a witness from speaking to the police is not sufficient under the statute." We reject the contention that discouraging the witness from speaking to the police could not suffice when there was evidence that the defendant believed an official proceeding was imminent.

"Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . .

Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant *intended the natural consequences of his voluntary conduct.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Bennett-Gibson,* 84 Conn. App. 48, 53, 851 A.2d 1214 (2004), cert. denied, 271 Conn. 916, 859 A.2d 570 (2004).

In *Bennett-Gibson,* this court explained that to prove inducement or an attempt thereof pursuant to § 53a-151, the evidence before the jury must be sufficient to conclude that the defendant's conduct was intended to prompt the witness to be absent from official proceedings that the defendant believed were pending or about to be instituted or to testify falsely or to refrain from testifying at those proceedings. Id., 53 n.4; see *State* v. *Cavallo,* supra, 200 Conn. 668.

In *Cavallo,* our Supreme Court held that "[t]he language of § 53a-151 plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent. The legislature's unqualified use of the word 'induce' clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. Although the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute is read as a whole." *State* v. *Cavallo,* supra, 200 Conn. 668. For reasons that follow, we conclude that the evidence sufficed to supply the required factual predicate for the elements of the crime, including intent.

In the present case, the state presented the following relevant evidence. The defendant knew that the police were aware of the identities of the participants in the

robbery. The defendant knew that Fragola had turned herself in to the police and had implicated Draughn, Poole and the defendant in the robbery. From this evidence, the jury reasonably could have inferred that the defendant believed that an official proceeding was about to be instituted. When Poole relayed to the defendant that he, too, likely would go to the police, the defendant became "unhappy" and, in a threatening tone, told Poole that although he loved Poole like a brother, if Poole went to the police, it would be "his ass." The jury reasonably could have inferred that this slang expression was a threat, designed to prevent Poole, a witness to the events, from giving information to the police and, thus, to withhold evidence which would implicate the defendant in an official proceeding that was imminent, namely, an arrest followed by a criminal prosecution resulting in a trial in which testimony would be taken under oath.[1]

"[I]t is our function to review the evidence and construe it as favorably as possible with a view toward sustaining the conviction, and then [to] determine whether, in light of the evidence, the trier of fact could reasonably have reached the conclusion it did reach." (Internal quotation marks omitted.) *State* v. *Foreshaw*, supra, 214 Conn. 551. From the evidence presented, the jury reasonably could have concluded beyond a reasonable doubt that the defendant was guilty of tampering with Poole, a witness to the crime, by threatening

[1] On the tampering charge, the court had instructed the jury without objection that it was necessary for the state to prove that "the defendant believed an official proceeding was pending or about to be instituted. An official proceeding is any proceeding [that is] held or may be held before any judicial official authorized to take evidence under oath. A criminal case in court is one example of an official proceeding." The jury was present at the defendant's trial, heard Poole's testimony concerning the defendant's warning to him to refrain from talking to the police and personally observed that Poole and all witnesses were administered an oath and gave sworn testimony on the very charges for which the defendant was convicted.

him in an effort to get him to withhold information from the police when the defendant believed an official prosecution of him was about to be instituted. Therefore, we affirm the judgment of the trial court.

Last, the defendant, recognizing that we are bound by Supreme Court precedent, states that if we find *State v. Foreshaw*, supra, 214 Conn. 540, to be binding authority for our interpretation of whether an "official proceeding was about to be instituted," he will seek certification from our Supreme Court with a request that *Foreshaw* be overruled. We leave him to that remedy.

The judgment is affirmed.

In this opinion the other judges concurred.