******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom PALMER and EVELEIGH, Js., join, concurring in part and dissenting in part. I agree with the majority's conclusion in part I of its opinion that the defendant, Victor L. Jordan, Sr., was not deprived of his right to a fair trial because of the prosecutor's failure to correct the potentially misleading testimony of two state witnesses. I disagree, however, with the majority's conclusion in part II of its opinion that there was insufficient evidence to support the defendant's conviction of tampering with physical evidence in violation of General Statutes § 53a-155. In my view, the majority's analysis is flawed because it overlooks the testimony of a key state witness regarding the defendant's belief at the time he discarded the clothing, ignores other evidence that the defendant intended to discard the clothing because he believed an official proceeding was probable, and misconstrues this court's holding in *State* v. *Foreshaw*, 214 Conn. 540, 572 A.2d 1006 (1990). Accordingly, I respectfully dissent from part II of the majority opinion.

I

I begin with the majority's failure to acknowledge the highly persuasive testimony of Jennifer Campbell, a key prosecution witness. The majority states that "the jury could not reasonably have concluded that the defendant believed that an official proceeding against him was probable when he discarded the evidence" because "there was no evidence that the defendant believed that the police officer knew his identity or had any other information connecting him to the crime." The majority further maintains that "[t]here [was] no evidence that when the defendant discarded the clothing he believed that the police officer had any information, other than the clothing, linking him to the attempted bank robbery. Thus, the defendant discarded the only piece of evidence connecting him to the crime . . . ." The majority thus concludes that the evidence was insufficient to support the jury's finding that the defendant tampered with physical evidence in violation of § 53a-155 (a). I disagree.

At trial, Campbell, the defendant's girlfriend, testified that the defendant called her and asked her to meet him at a nearby motel on the evening of April 1, 2008, shortly after he eluded the police. Campbell also testified that, when she asked the defendant what had happened and why he was wet and his jeans were muddy, he stated that "he was going to commit a heist, but the place was closed." Campbell added in response to a question as to whether the defendant had said anything about being chased: "Yes. He said he [was] being chased through the muddy woods because the police had assumed he was the person in the mask."

From this undisputed testimony, the jury reasonably could have inferred that the defendant believed at the time he disposed of the clothing that an official proceeding was probable because, in his mind, the police officer chasing him assumed he was the person who had attempted to enter the bank. The fact that the defendant was apparently unaware of the parking lot witness, the police radio report describing a suspicious male who had tried to enter the bank, or any other direct evidence connecting him to the crime is immaterial. Campbell's testimony as to what the defendant believed, together with evidence that he hid the highly identifiable clothing in a closed trash container and behind a nearby carport, is undeniably powerful and, in my view, indicative of his guilt. Indeed, I would suggest that the foregoing evidence is even more persuasive than the evidence this court found convincing in *State* v. *Foreshaw*, supra, 214 Conn. 550, because there was no testimony in *Foreshaw* regarding the defendant's state of mind before she disposed of the gun. See id., 550–51.

The majority dismisses Campbell's testimony, claiming that "the most reasonable explanation for the defendant's subsequent removal and discarding of the clothes . . . was that he did so in the hope that, if the police ultimately apprehended him, they would be unable to identify him as the person who had been wearing the clothes." Footnote 21 of the majority opinion. I disagree, especially when Campbell's testimony is considered together with other evidence of the defendant's conduct during and following the pursuit.

After the defendant's initial contact with the police, he decided to run, *with the police officer chasing him*, to his own, easily identifiable vehicle to speak with Herman Cordero, his friend, on Birch Meadow Drive, a dead-end street that required Cordero to drive past the officer in order to escape. It is common sense that the defendant would believe that the officer saw him stop and speak to Cordero and that the officer would be able to provide an accurate description of the vehicle, and possibly even a license plate number. The defendant also knew that his cell phone was in the vehicle and contained additional identifying information.

Once the defendant arrived at Sprucewood Road, the next street over, he appeared to believe he was still being chased, but, presumably, after seeing that the officer had not successfully followed him through the woods, he stopped and looked around. Only *after* the defendant escaped the officer's pursuit did he begin taking off some of his outer clothing. Moreover, the defendant did not throw the clothing to the ground, as one would expect from someone fleeing from the police but, instead, hid them in a closed trash container and behind a nearby carport. If the defendant truly believed that the police did not have enough information to iden-

tify and arrest him, it would have been far more logical and efficient for him to discard the clothing quickly rather than taking the time to conceal it. Accordingly, because the defendant would have known, at the time he hid the clothing, that the police had, or would soon have, a significant amount of evidence that would likely result in his arrest and prosecution, the jury reasonably could have concluded that the defendant believed at that time that an official proceeding was probable.

The majority posits that the fact that the defendant said to Cordero, "meet me on the other street, meet me on the other street," when he spoke with Cordero on Birch Meadow Drive weighs against an inference that the defendant believed an official proceeding was probable. If anything, however, this statement supports the opposite conclusion. After the defendant told Cordero to "meet [him] on the other street," the defendant ran into the woods and onto Sprucewood Road, where he appeared to be looking around. Cordero, however, never arrived at Sprucewood Road. From this evidence, the jury could have reasoned that the defendant expected to see Cordero on Sprucewood Road and that, after Cordero failed to appear, the defendant believed Cordero had been stopped and would provide information to the police about the attempted robbery.

The defendant's actions *after* he discarded the clothing also suggest that he believed an official proceeding was probable. For example, instead of going home that night, the defendant chose to stay in a motel with his family. He also asked Campbell to check them in under her name. Such precautions would have been unnecessary if the defendant had believed the police did not have enough information to identify, locate and arrest him.[1]

A jury also could reasonably find, merely on the basis of evidence that the defendant discarded the clothing, that he did so with the intent to prevent its availability at a probable future proceeding. This court has stated that "[i]ntent may be, and usually is, inferred from [a] defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant *intended the natural consequences of his voluntary conduct*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, 312 Conn. 551, 565, 93 A.3d 1128 (2014). Thus, if the circumstances were such that the defendant believed that an official proceeding was likely and that the items of clothing probably would be used against him at a subsequent trial, then it follows that the defendant's disposal or concealment of that evidence evinced his intent to obstruct the use of the evidence at the future proceeding.

In the present case, because the defendant had covered his face, making identification difficult, the dark,

heavy clothing was one of the most important pieces of evidence connecting him to the crime. It is reasonable to infer, however, that the defendant did not believe that the clothing was the *only* evidence linking him to the crime because, as previously explained, he would have been aware that there existed other incriminating evidence, as well. Thus, although disposal of the clothing would not have *prevented* the police from eventually identifying and arresting him, it would have made the state's case more difficult to prove at trial.

"When reviewing a sufficiency of the evidence claim, we do not attempt to weigh the credibility of the evidence offered at trial, nor do we purport to substitute our judgment for that of the jury. Instead, our review consists of a two-step process in which *we construe the evidence presented at trial in a light most favorable to sustaining the verdict* . . . and then determine whether the jury could reasonably have found, [on the basis of] the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Emphasis added; internal quotation marks omitted.) Id., 572. Section 53a-155 (a) requires only that a defendant believe that an official proceeding is probable and that the evidence was discarded to prevent its availability for use in such a proceeding. I thus disagree with the majority that "the most reasonable explanation for the defendant's subsequent removal and discarding of the clothes . . . was that he did so in the hope that, if the police ultimately apprehended him, they would be unable to identify him as the person who had been wearing the clothes." Footnote 21 of the majority opinion. Rather, in view of Campbell's testimony regarding the defendant's state of mind when he saw the police officer chasing him, as well as all of the other evidence of his conduct during and following the pursuit, the jury reasonably could have inferred that the defendant hid the highly identifiable clothing not only to prevent the police from finding it and using it to apprehend and identify him, but to conceal it so that it would be unavailable at a proceeding that was "about to be instituted . . . ." General Statutes § 53a-155.

## II

I also disagree with the majority's interpretation of *Foreshaw*. The majority appears to suggest that, under *Foreshaw*, the state must prove that the defendant believed an official proceeding was probable because he was aware of significant evidence connecting him to the crime. The majority explains that, "because [the defendant in *Foreshaw*] anticipated that the police would apprehend her *on the basis of information connecting her to the shooting*, she disposed of the gun believing that an official proceeding, and not just an investigation, was pending or probable. . . . Conversely, had [the defendant] discarded the gun to pre-

vent detection or *to avoid being implicated in the shooting in the first instance*, and thus believing that only an investigation, and not an official proceeding, was pending or probable, the belief and intent elements [of] § 53a-155 would be lacking." (Emphasis added.) I disagree with the majority's interpretation of *Foreshaw* because it conflates the evidence in that case with the legal principles on which the *Foreshaw* court relied in upholding the defendant's conviction.

Although the court relied in part on evidence that there were witnesses to the shooting, it had no intention of establishing a new legal principle that a defendant's knowledge of witnesses or other direct evidence connecting him to the crime is absolutely necessary to establish the mens rea element of § 53a-155. See *State* v. *Foreshaw*, supra, 214 Conn. 550–51. Rather, the court reasoned that "[t]he statute . . . speaks to that which is *readily apt to come into existence or be contemplated* and thus plainly applies to the official proceeding arising out of such an incident." (Emphasis added.) Id., 551. In other words, the court construed the statute broadly in order to accommodate the wide range of evidence from which a jury could infer that a defendant believed an official proceeding was probable when tampering with physical evidence. Thus, the type of incriminating evidence the court found persuasive in *Foreshaw*, which consisted of witnesses to the shooting, the defendant's immediate flight from the scene, and her subsequent admission that she discarded the gun to avoid being caught with it in her possession; id., 550; is persuasive in other cases only to the extent they involve similar facts.

Imposing an inflexible requirement that there be evidence of the defendant's prior knowledge of witnesses or other evidence directly connecting him to the crime is unwise because it is not mandated by the statute and invades the province of the jury. Section 53a-155 (a) provides in relevant part: "A person is guilty of tampering with . . . physical evidence if, believing that an official proceeding is pending, or about to be instituted, he (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding . . . ." The statute makes no reference to the type of evidence required to satisfy the mens rea element, and for good reason. As this court recently noted in a case involving witness tampering under General Statutes § 53a-151 (a),[2] which contains a similar mens rea element, "the inferences made from a defendant's conduct will depend on *the facts and circumstances of each individual case under both §§ 53a-151 (a) and 53a-155*. Thus, we do not agree . . . that these inferences are invariably compelled as a matter of law but, instead, conclude that the defendant's belief and intent are questions of fact for the jury to decide." (Emphasis added.) *State* v. *Ortiz*, supra, 312 Conn. 566 n.7. Accordingly, requiring as a

matter of law that the defendant have knowledge of witnesses or other evidence directly connecting him to the underlying crime in order to establish the mens rea element of § 53a-155, which is what the majority appears to have done, strips the jury of its authority to decide whether other evidence, such as evidence indirectly connecting the defendant to the underlying crime, is sufficient to support an inference that the element has been satisfied. I therefore disagree with the majority that *Foreshaw* compels the application of such a requirement in this or any future case in which the facts may differ.

In sum, this court's task is not to determine the most compelling or likely scenario but, rather, to view the evidence in the light most favorable to sustaining the verdict and to determine whether there is sufficient evidence to support that verdict. The majority's approach in the present case "simply is inconsistent with our well settled review of sufficiency challenges, which are conducted with an eye toward sustaining jury verdicts, even those with which this court may disagree." *State* v. *Fourtin*, 307 Conn. 186, 231, 52 A.3d 674 (2012) (*Norcott, J.*, dissenting). Consequently, because I believe there is sufficient evidence from which the jury reasonably could have inferred that the defendant acted with the requisite belief and intent, and because it is uncontested that the defendant disposed of the relevant evidence, I would conclude that the defendant's conviction of tampering with physical evidence should stand.

For the foregoing reasons, I respectfully dissent from part II of the majority opinion.

[1] I agree with the majority that the relevant inquiry is whether the defendant believed, *at the time he discarded the clothing*, that an official proceeding was probable. That does not mean, however, that the jury cannot consider events that occurred after the defendant discarded the clothing to infer that belief, such as his checking into a motel under Campbell's name. This court commonly considers subsequent actions by the defendant to determine an earlier intent. For instance, we consider evidence of fleeing from the scene of a crime as evidence of a defendant's consciousness of guilt. See, e.g., *State* v. *Figueroa*, 257 Conn. 192, 196, 777 A.2d 587 (2001) ("[f]light, when unexplained, tends to prove a consciousness of guilt" [internal quotation marks omitted]). The weight of this evidence is a question for the jury.

In the present case, the defendant checked into the motel mere hours after the alleged crime occurred. This evidence clearly would be relevant to a jury in determining whether the defendant believed an official proceeding was probable when he had discarded the clothing.

[2] General Statutes § 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."