STATE OF CONNECTICUT *v.*
DEREK RICHARD BEEBE
(AC 31585)

Bishop, Robinson and Borden, Js.

Argued June 1—officially released September 20, 2011

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Charles W. C. Johnson*, assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Derek Richard Beebe, appeals from the judgment of conviction, rendered after a jury trial, of two counts of attempt to commit robbery

in the first degree in violation of General Statutes §§ 53a-134 (a) and 53a-49 (a) (2), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant claims that: (1) the court improperly instructed the jury on the issue of irrelevance of punishment; and (2) the evidence was insufficient to support his conviction of attempt to commit robbery while using or threatening the use of a dangerous instrument. We affirm the judgment of the trial court.

The defendant was charged by way of an amended long form information with attempt to commit robbery in the first degree in violation of §§ 53a-134 (a) (3)[1] and 53a-49 (a) (2), attempt to commit robbery in the first degree in violation of §§ 53a-134 (a) (4)[2] and 53a-49 (a) (2), and threatening in the second degree in violation of § 53a-62 (a) (1).[3] The jury returned a verdict of guilty on all of the charges, and the court rendered judgment accordingly. In addition, the jury found that the defendant, during the commission of a felony, "used, was armed with or threatened the use of, or displayed, or represented by his words or conduct that he possessed any firearm . . . ." See General Statutes § 53-202k.[4]

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[3] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

[4] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents

During the sentencing proceeding, the court merged the two counts of attempted robbery and sentenced the defendant on the conviction of attempted robbery in the first degree in violation of § 53a-134 (a) (4) to a term of fifteen years imprisonment, execution suspended after one year, followed by five years of probation. That sentence was enhanced by a consecutive term of five years incarceration pursuant to General Statutes § 53-202k. See footnote 4 of this opinion. Regarding the threatening conviction, the court sentenced the defendant to a term of one year of incarceration, execution suspended, with one year of probation, to be served consecutively to the sentence imposed on the attempted robbery conviction. Accordingly, the defendant's total effective sentence with respect to the aforementioned convictions was twenty-one years incarceration, execution suspended after six years, followed by five years of probation. This appeal followed.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the afternoon of September 10, 2007, the defendant was gathered with a group of acquaintances at the Xtra Mart convenience store in Somers, which was located directly across the street from the China City Restaurant. While the defendant was at the Xtra Mart store, one of his acquaintances, namely, Jesse Morse, observed the defendant pull up his shirt and display a black gun tucked into his waistband. The defendant and other members of the group, including Morse, then proceeded to the Mill Pond parking area a short distance away. While at the parking area, Morse witnessed the defendant grab a pair of sunglasses and a hooded sweatshirt from another person's vehicle, put those items on, and walk toward the China City Restaurant.

by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

Ling Jing Yang was working in the China City Restaurant on the afternoon of September 10, 2007, when the defendant, dressed in dark clothes and sunglasses, entered and placed an order for food. Yang turned around to calculate his order, and when she turned back to face the defendant, he lifted up his shirt, displayed the gun in his waistband and said, "give me money." Yang then loudly called for her husband, Kevin Wu, who was in the back of the restaurant. Wu opened the back door of the restaurant and observed a man wearing dark clothes running away.

Jason Ramsey, another acquaintance of the defendant, was in the Mill Pond parking area when he witnessed the defendant run through the back of a field, hop a fence, enter the parking area and state that "he needed a ride to get out of there." The defendant and Ramsey got into Ramsey's truck and drove away. As they proceeded up the road, the defendant told Ramsey that he had tried to rob the China City Restaurant "and that the lady had screamed so loud . . . that he just ran out." The defendant also showed Ramsey a black gun that he had wrapped up in a T-shirt. Ramsey then dropped the defendant off at a friend's house and drove straight home to drop his truck off because he "was scared to drive [his] truck back down to the Mill Pond [parking area] because . . . people had seen [him and the defendant] drive away together."

Later that day, the defendant met with his friend, Erica L. Dollak. Dollak subsequently gave a statement to the police, admitted as substantive evidence pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), which described the encounter she had with the defendant following the incident at the China City Restaurant. Dollak described the defendant's demeanor as "very scared," although "[h]e was pretty sure . . . that he wouldn't be recognized because he was wearing

sunglasses, a baseball hat and a hooded sweatshirt." The defendant told Dollak that he went into the restaurant wearing that disguise but left because of a "blood-curdling scream" let out from the woman working in the restaurant. Following the loud scream, the defendant "ran out of there" and proceeded to the Mill Pond parking area. Additional facts will be set forth as necessary.

I

The defendant first raises an unpreserved constitutional challenge to the court's jury instructions. Specifically, he claims that the court improperly instructed the jury that its findings with respect to the defendant's guilt or innocence should not be influenced by the potential punishment that may flow from a guilty verdict.[5] The defendant argues, in essence, that by instructing the jury as to the irrelevance of punishment, the court "undermined the state's burden imposed by the due process guarantees of the federal and state constitutions of proving him guilty beyond reasonable doubt." Conceding that he did not preserve this claim at trial, the defendant now seeks to prevail pursuant to the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] Our careful review

---

[5] The defendant takes issue with a portion of the court's final charge to the jury, in which it instructed: "Now, you should not be concerned in any way with the punishment to be imposed in this case in the event of a guilty verdict. That is a matter exclusively within my province under the limitations and restrictions imposed upon me by the law. You are to find the accused guilty or not guilty uninfluenced by the probable punishment or consequences that would follow a conviction."

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

of the record, however, reveals that the defendant implicitly waived his instructional error claim; therefore, his claim fails to satisfy *Golding*'s third prong. See *State* v. *Kitchens*, 299 Conn. 447, 467, 10 A.3d 942 (2011).

The following additional facts are relevant to our resolution of the defendant's claim. On the evening of June 30, 2009, the court sent an e-mail to both parties that included a working draft of its final charge. The draft included the irrelevance of punishment instruction that is now challenged on appeal. On the morning of July 1, 2009, the court indicated to the parties that it wanted to have a charging conference on the record and asked whether the prosecutor and defense counsel had received the electronic draft of the final charge. Both responded in the affirmative. Later that day, at the charging conference, the court indicated that it was going to make two changes to the draft charge, both of which were unrelated to the irrelevance of punishment instruction.[7] After discussing those two changes, the court inquired whether the parties had any other objections to the instructions. At that time, defense counsel raised concerns with particular instructions that related to a witness' recorded past recollections, whether the jury should be instructed in the alternative with respect to the two attempted robbery counts, and how to address the sentence enhancement count. Defense counsel did not raise any objections to the proposed irrelevance of punishment instruction.

The next day, the court noted on the record that that morning it had again reviewed the proposed final charge with counsel for both parties. Following closing arguments that day, the court issued its instructions to the jury, which included an irrelevance of punishment

---

[7] Specifically, the court modified the instructions to reflect the state's filing of a substitute information and to include a consciousness of guilt instruction.

instruction that was a virtual verbatim reproduction of the draft instruction provided to the parties. At the conclusion of its charge, the court inquired of defense counsel whether he had any objections or other comments concerning the instructions, to which he answered in the negative.

"It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Golding* unless they have been . . . implicitly waived." Id., 468. As our Supreme Court explained in *Kitchens*, "Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them." Id., 480. Accordingly, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. In *State* v. *Mungroo*, 299 Conn. 667, 676, 11 A.3d 132 (2011), our Supreme Court elaborated on its holding in *Kitchens*, emphasizing that the "*opportunity* for meaningful review and discussion can give rise to a determination that a defendant has implicitly waived his or her constitutional right to challenge the instructions on direct appeal. . . . Actual discussion of the instruction later challenged is not required." (Citation omitted; emphasis in original.)

In the present case, we conclude, consistent with our Supreme Court's recent waiver jurisprudence; see, e.g., id., 667; *State* v. *Akande*, 299 Conn. 551, 11 A.3d 140 (2011); *State* v. *Kitchens*, supra, 299 Conn. 447; that the defendant implicitly waived his instructional error

claim. The underlying record illustrates that the court provided defense counsel with a copy of the draft jury charge and afforded counsel multiple opportunities to review and to raise objections to the language set forth in the instructions before the instructions were delivered to the jury. See *State* v. *Akande,* supra, 561 (defense counsel's review of supplemental instruction overnight "in a deliberate manner without undue time constraints" provided meaningful opportunity to review proposed instructions). During the charging conference, the court solicited comments from defense counsel regarding modifications to the proposed instructions and, absent objections unrelated to the irrelevance of punishment instruction, counsel affirmatively accepted the instructions now challenged on appeal. "In sum, defense counsel had meaningful and multiple opportunities to review the trial court's instructions and to object to any language therein, and, in response to solicitation by the trial court, repeatedly indicated his satisfaction with the charge." *State* v. *Mungroo,* supra, 299 Conn. 676.

## II

The defendant next claims that the evidence was insufficient to support his conviction of attempt to commit robbery while using or threatening the use of a dangerous instrument in violation of §§ 53a-134 (a) (3) and 53a-49 (a) (2). Specifically, he claims that the evidence was insufficient to prove that he threatened to use the gun tucked in his waistband as a bludgeon or hitting device. In light of the following analysis, we do not reach this claim.

As set forth previously, the court merged the defendant's attempted robbery conviction in violation of §§ 53a-134 (a) (3) and 53a-49 (a) (2); see footnote 1 of this opinion; with his attempted robbery conviction in violation of §§ 53a-134 (a) (4) and 53a-49 (a) (2); see

footnote 2 of this opinion; and sentenced him only on the count in which the state charged him with a violation of § 53a-134 (a) (4). The defendant makes no claim that the evidence was insufficient to support his attempted robbery conviction pursuant to § 53a-134 (a) (4); his claim is aimed solely at the evidentiary sufficiency of the attempted robbery conviction under § 53a-134 (a) (3). Consequently, we agree with the state that, as a result of the court's having merged the conviction on the two attempted robbery counts, we need not consider the defendant's claim that the evidence was insufficient to support his attempted robbery conviction in violation of § 53a-134 (a) (3).

In *State* v. *Longo*, 106 Conn. App. 701, 943 A.2d 488 (2008), this court was presented with a similar sufficiency of the evidence challenge directed at the merger of a conviction under two subdivisions of the same statute. Although *Longo* involved convictions for operating a motor vehicle while under the influence of intoxicating liquor, its reasoning is instructive. In *Longo*, the defendant was charged with and convicted of driving under the influence in violation of General Statutes (Rev. to 2005) § 14-227a (a) (1)[8] (behavioral subdivision) and General Statutes (Rev. to 2005) § 14-227a (a) (2) (per se subdivision).[9] Id., 704. The court subsequently merged the conviction on the two counts for sentencing purposes. Id. On appeal, the defendant

---

[8] General Statutes (Rev. to 2005) § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both . . . ."

[9] General Statutes (Rev. to 2005) § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

claimed that the evidence presented by the state was insufficient to support his conviction under both the behavioral and per se subdivisions. Id., 705. This court disagreed, concluding that there was sufficient evidence to support the defendant's conviction under the behavioral subdivision of § 14-227a. Id., 706. Of particular relevance to this appeal, this court also declined to address the defendant's sufficiency of the evidence challenge with respect to his conviction under the per se subdivision of § 14-227a. Id., 705–706. The court reasoned that, "as a result of the merger of the convictions under both subdivisions, the defendant's conviction with respect to the 'behavioral' subdivision, (a) (1), remains valid and in effect. In other words, because the state presented sufficient evidence to demonstrate that the defendant had operated a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1), we need not consider the defendant's claim that the state failed to produce any evidence of an elevated blood alcohol content by weight." Id.

We conclude that this rationale applies with equal force to the present circumstances. It is undisputed that the court merged the defendant's attempted robbery conviction in violation of § 53a-134 (a) (3) with the attempted robbery conviction in violation of § 53a-134 (a) (4). It is also undisputed that the defendant does not claim that the evidence was insufficient to support his conviction under § 53a-134 (a) (4). Moreover, just as the behavioral and per se subdivisions of § 14-227a represent different ways in which a defendant can be convicted of the offense of operating under the influence, both § 53a-134 (a) (3) and § 53a-134 (a) (4) are subdivisions of § 53a-134 (a) that set forth alternative ways to commit the crime of robbery in the first degree. Accordingly, our appellate jurisprudence is clear that the merging of a conviction under two subdivisions of the same statute, each of which represents a separate

path for committing the same offense, forecloses a defendant's opportunity to challenge on appeal the sufficiency of the evidence with respect to only one of the original counts, particularly where the evidence as to the other conviction is either unchallenged, as in the present case, or sufficient to sustain the conviction under the alternative subdivision. Cf. *State* v. *Hood*, 106 Conn. App. 189, 198, 941 A.2d 955, cert. denied, 286 Conn. 921, 949 A.2d 481 (2008); *State* v. *Pulaski*, 71 Conn. App. 497, 505–506, 802 A.2d 233 (2002).

One final comment. The plaintiff contends that our Supreme Court's holding in *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), warrants a different conclusion. In *Chicano*, our Supreme Court determined that the defendant's double jeopardy rights in that case were violated by his conviction of, and sentencing for, both felony murder and manslaughter in the first degree, inasmuch as the latter crime is a lesser included offense of the former crime. Id., 721. The court, thereafter, addressed the issue of the appropriate form of the remand when a trial court has imposed multiple punishments for the same crime. Id., 721–22. Specifically, the court examined whether both the sentence and the conviction for the lesser offense should be vacated, or if only the sentence should be vacated with the convictions being combined into a compound offense. Id., 722–24. Consistent with the approach of the United States Court of Appeals for the Second Circuit, our Supreme Court concluded that the proper procedure when a court has imposed multiple punishments for the same offense is to vacate the additional sentence only and to combine the conviction of the two offenses into a compound offense. Id., 725. Accordingly, the court noted that if the conviction on the greater offense is "later invalidated for any reason and the defect at issue does not affect the [conviction]" on the lesser

included offense, the conviction on the lesser included offense "would be resuscitated . . . ." Id.

The defendant argues that the rule in *Chicano*, namely, the combining of convictions when a defendant has been convicted and sentenced on both a greater and lesser included offense, demands that he be able to challenge the evidentiary sufficiency of either of the two merged convictions in the present case because the invalidation of one of the convictions would result in the alternative conviction being resuscitated. The *Chicano* court, however, was not presented with the question of whether, once the convictions have been merged, it is proper for this court to consider a claim that the evidence is insufficient as to only one of the merged offenses. Moreover, pursuant to *Chicano*, if the surviving offense in the present case for which the defendant *was* sentenced is subsequently invalidated, the defendant may *then return to this court to* challenge the sufficiency of the evidence on the merged offense for which he was *not* sentenced. In any event, as we set forth previously, it is settled in our appellate jurisprudence that the effect of the trial court's merging of two convictions, the charges for which set forth alternative ways to commit the same crime, is to forbear the defendant from challenging on appeal the evidentiary sufficiency of the merged offense.

The judgment is affirmed.

In this opinion the other judges concurred.