## STATE OF CONNECTICUT *v.* AKOV ORTIZ
### (AC 31638)

Espinosa, Bishop and Foti, Js.

Argued September 19, 2011—officially released January 17, 2012

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, was *Timothy J. Liston*, former state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Akov Ortiz, appeals from the judgment of conviction, following a trial by jury, of tampering with a witness in violation of General Statutes § 53a-151 (a), criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The defendant makes the following claims on appeal: (1) that his actions could not, as a matter of law, constitute witness tampering, (2) that there was insufficient evidence to support his conviction of witness tampering, (3) that there was insufficient evidence to support his conviction of carrying a pistol

without a permit and (4) that the trial court failed to instruct the jury properly as to the elements of witness tampering. We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence presented. On April 14, 1997, a burglary occurred at a residence located on Plains Road in Haddam. During the course of the burglary, eight guns and a hunting knife were stolen. On April 17, 1997, the defendant told Louis Labbadia that he had committed the burglary. Labbadia reported this information to the police the same day.

In July, 1998, the defendant went to the home of Labbadia's fiancée, Robin Bonita, in Middletown. Bonita told the defendant that Labbadia "had gone to the police . . . ." On or about July 18, 1998, Labbadia was reported missing by his family. His remains were discovered on March 21, 1999, in Middletown.

On June 13, 1999, the defendant went to the home of Kristen Quinn, his former girlfriend, and knocked on her window. The defendant told Quinn that he had killed Labbadia by stabbing him with a knife. The defendant also told Quinn that he had dragged the body into a wooded area and disposed of the knife by throwing it in a river. The defendant indicated that, were it not for his conversation with Bonita, Labbadia would still be alive. Quinn wrote down what the defendant had told her and showed these notes to her mother the following day. Shortly thereafter, this information was conveyed to police.

On August 7, 1999, the defendant again went to Quinn's home. The defendant showed Quinn "a small handgun" and asked her to come outside.[1] Quinn then exited the residence through her bedroom window. The

---

[1] Quinn also testified that the gun was not a revolver.

defendant told Quinn that he had the gun for "insurance" if she told "the cops about what he said about [Labbadia]." The defendant said that if Quinn spoke to the police "[her] house was going to go up in smoke . . . ." The defendant stated that he knew where Quinn's grandparents lived. The defendant told Quinn that he was going to "put [her down] on [her] knees, put the gun to [her] head and scare [her] straight."[2] Later, Quinn informed the police of these events.

At 10:30 p.m. on August 10, 1999, the defendant called Quinn to arrange a meeting at a school near Quinn's home. Quinn told her mother about the call and her mother notified the police. Between 12:15 a.m. and 12:30 a.m. on August 11, 1999, the police apprehended the defendant at the school.

The defendant was charged with threatening in violation of General Statutes (Rev. to 1999) § 53a-62 (a) (1), tampering with a witness in violation of § 53a-151 (a), criminal trespass in the first degree in violation of § 53a-107 (a) (1) and carrying a pistol without a permit in violation of § 29-35 (a).[3] After a trial, the jury found the defendant not guilty of threatening, but guilty of the remaining three charges. On May 29, 2003, the trial court imposed a total effective sentence of six years of incarceration for these crimes. This appeal followed. Additional facts will be set forth below as necessary.

The defendant has presented four issues on appeal. Specifically, the defendant argues that (1) attempting to prevent someone from making statements to the police cannot violate our witness tampering statute, (2) there was insufficient evidence that the defendant

---

[2] According to Quinn, the defendant never carried through with this threat.

[3] These charges pertain to the events of August 7, 1999. The defendant was charged separately for crimes pertaining to the murder of Labbadia and the robbery that occurred on April 14, 1997. Although these charges were eventually consolidated, only those charges relating to the defendant's interaction with Quinn are relevant to the present appeal.

possessed the specific intent required for conviction of witness tampering, (3) there was insufficient evidence that the barrel of the gun possessed by the defendant on August 7, 1999, was under twelve inches, as required for conviction of carrying a pistol without a permit, and (4) the trial court's failure to instruct the jury on the specific intent element of witness tampering requires us to reverse his conviction on that charge. We address these arguments in turn.

I

The defendant's first argument is that our witness tampering statute, § 53a-151 (a), cannot be violated by discouraging someone from making statements to the police. This reading of § 53a-151 is foreclosed by *State v. Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). In that case, the defendant "told [the witness] that although he loved [him] like a brother, if [he] went to the police, it would be 'his ass.' " Id., 620. On appeal, the defendant argued that "[t]he intent to prevent a witness from speaking to the police is not sufficient [to constitute a violation of § 53a-151]." Id., 618. We rejected this reasoning, concluding that § 53a-151 is violated when "a defendant, knowing he has been implicated as a participant in a crime, threatens a likely witness to that crime, to withhold evidence from the police . . . ." Id.[4] "[T]his court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 68 n.9, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926,

---

[4] Counsel for the defendant has conceded, both in his brief and at oral argument, that this particular holding of *Pommer* is not dicta and, consequently, must be revisited in order to reverse the defendant's conviction of witness tampering on this ground.

11 A.3d 150 (2011). We therefore decline the defendant's invitation to revisit this issue in the present case.

## II

The defendant's second argument is that the state presented "no evidence that he believed an official proceeding was about to be instituted" and therefore there is insufficient evidence to support his witness tampering conviction. We disagree.

We begin our analysis of the defendant's claim by setting forth the standard of review. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the . . . verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the [finder of fact] could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Monahan*, 125 Conn. App. 113, 118, 7 A.3d 404 (2010), cert. denied, 299 Conn. 926, 11 A.3d 152 (2011).

Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." Thus, in order to obtain a conviction of witness tampering, the state must prove beyond a reasonable doubt that the defendant believed an official proceeding was pending or was about to be instituted against him. See *State* v. *Cavallo*, 200 Conn. 664, 668–69, 513 A.2d 646 (1986).

In the present case, the defendant argues that when he spoke with Quinn it was "likely that [the] defendant

no longer believed he was a suspect" because several months had passed and the police had not yet arrested him. Although the passage of time might make it more likely that the defendant no longer was concerned about the imposition of an official proceeding, the jury was not required to reach that conclusion from the evidence presented. Indeed, the state submitted evidence that less than two months prior to threatening Quinn, the defendant confessed to her that he killed Labbadia by stabbing him and told her that he had dragged Labbadia's body into a wooded area. The evidence also demonstrates that the defendant was concerned that Quinn would report this information to the police and that he had threatened to "put [her down] on [her] knees, put the gun to [her] head and scare [her] straight." Presented with this evidence, the jury reasonably could have inferred that the defendant believed that an official proceeding was about to be instituted.

III

The defendant's third argument is that his conviction on the charge of carrying a pistol without a permit must be reversed because there was insufficient evidence that the gun he used to threaten Quinn had a barrel length of less than twelve inches. We disagree.

Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length." General Statutes § 29-27. Thus, in order to obtain a conviction of carrying a pistol without a permit, the state must prove, beyond a reasonable doubt, that the gun possessed by the defendant on August 7, 1999,

was less than twelve inches in length. This element, however, need not be proven with direct numerical evidence. *State* v. *Fleming*, 111 Conn. App. 337, 347, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009).

In *State* v. *Williams*, 231 Conn. 235, 645 A.2d 999 (1994), overruled in part on other grounds by *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000) (en banc), our Supreme Court concluded that there was sufficient evidence to support the defendant's conviction of carrying a pistol without a permit when several witnesses testified that the defendant had pulled a " 'small handgun' " out of his " 'waist length jacket.' " Id., 252. Specifically, the court reasoned that "it is extremely unlikely that anyone would describe as 'small' a handgun that had a barrel of one foot or longer." Id.; see also *State* v. *Legnani*, 109 Conn. App. 399, 406, 951 A.2d 674, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008). Likewise, in *State* v. *Miles*, 97 Conn. App. 236, 903 A.2d 675 (2006), this court concluded that the evidence was sufficient to support a conviction when the gun possessed by the defendant was described to the jury as "small" and "silver." Id., 242 n.7; see also *State* v. *Perry*, 48 Conn. App. 193, 198, 709 A.2d 564 ("some measure of descriptive evidence from which the jury may properly infer the barrel length is necessary in order for the state to satisfy its burden of proof"), cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

In the present case, Quinn described the firearm possessed by the defendant on August 7, 1999, as a "small handgun" that was not a revolver. Moreover, the state submitted expert testimony indicating that semiautomatic handguns do not exceed twelve inches in length. Specifically, Edward Jachimowicz, a firearms tool mark examiner with the department of public safety, testified that he was familiar with manufacturers of semiautomatic handguns and that he had "never seen" one with

a barrel in excess of twelve inches. Presented with this evidence, the jury reasonably could have inferred that the defendant possessed a gun with a barrel length of less than twelve inches on August 7, 1999.

## IV

The defendant's fourth argument is that the court erred by failing to instruct the jury that specific intent is an essential element of witness tampering. Although the defendant did not file a request to charge on the count of witness tampering and did not object to the instruction given at trial, he requests review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because we conclude that the defendant has waived his right to raise this claim on appeal, we decline to review it under *Golding*.[5] See *State* v. *Kitchens*, 299 Conn. 447, 466–67, 10 A.3d 942 (2011).

The following additional facts are relevant to our resolution of the defendant's claim. The defendant filed a request to charge on February 18, 2003. The defendant concedes that this document did not include an instruction on tampering with a witness.[6] On February 20, 2003, the parties were provided with a written copy of the court's proposed jury instructions. The court entered a copy of these proposed instructions into the record for the purposes of appellate review. Later that day, the trial court held a charging conference on the record during which defense counsel requested several specific alterations to the proposed charge, including revisions to the charge on witness tampering.[7] The

---

[5] The defendant also seeks review under the plain error doctrine. See Practice Book § 60-5. We note that the possibility of such review is also foreclosed by our finding of waiver. See *State* v. *Bharrat*, 129 Conn. App. 1, 17, 20 A.3d 9 ("[i]t is well settled . . . that when a right has been affirmatively waived at trial, we generally do not afford review under either *Golding* or the plain error doctrine" [internal quotation marks omitted]), cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011).

[6] The state did not to file a request to charge in the present case.

[7] Unlike conferences examined in other cases; see *State* v. *Baptiste*, 302 Conn. 46, 54, 23 A.3d 1233 (2011); this proceeding provided both the state

following day, the court held an additional conference in chambers off the record. The judge summarized the issues raised in this conference on the record in open court.[8] Thereafter, defense counsel represented to the court that he had no additional objections to the proposed instructions. The instructions actually given to the jury on the charge of witness tampering were identical in all material respects to those contained within the proposed instructions provided to the parties the previous day.

In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

In *State* v. *Kitchens*, supra, 299 Conn. 467, our Supreme Court noted that "[i]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ."

and the defendant the opportunity to request numerous substantive revisions to the proposed instructions. Indeed, our review of the record indicates that the transcript of this conference consumes approximately eighty-five pages.

[8] Counsel for both the defendant and the state indicated on the record that the summary given by the trial judge was both accurate and complete.

(Internal quotation marks omitted.) Id. "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83.[9]

In the present case, defense counsel received an advance copy of the court's proposed jury instructions and actively participated in a lengthy charging conference on the record the day before the instructions were given. Moreover, an additional conference was held in chambers the following morning, and the contents of that conference were summarized for the record. We conclude that these facts are sufficient to establish that defense counsel was afforded a meaningful opportunity to review the proposed instructions. Compare *State v. Beebe*, 131 Conn. App. 485, 493, 27 A.3d 26 (2011) (meaningful opportunity existed when "[t]he underlying record illustrates that the court provided defense counsel with a copy of the draft jury charge and afforded counsel multiple opportunities to review and to raise objections") and *State v. Akande*, 299 Conn. 551, 561–62, 11 A.3d 140 (2011) (defense counsel's overnight review provided meaningful opportunity to review proposed instructions) with *State v. Baptiste*, 302 Conn. 46, 54, 23 A.3d 1233 (2011) (no meaningful opportunity when "the trial court held only a brief charging conference

---

[9] The defendant argues that *Kitchens* cannot be applied retroactively. This argument overlooks not only the general rule that judicial decisions apply retroactively; *State v. Balbi*, 89 Conn. App. 567, 576 n.5, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005); but also the fact that the standard announced by our Supreme Court in *Kitchens* has, in fact, been applied *retroactively* by our Supreme Court. See *State v. Thomas W.*, 301 Conn. 724, 732–33, 22 A.3d 1242 (2011).

and the defendant did not receive a written copy of the instructions"). Consequently, we conclude that the defendant has waived his right to raise this claim, and we decline to review it under *Golding*.[10]

The judgment is affirmed.

In this opinion ESPINOSA, J., concurred.

BISHOP, J., concurring in part and concurring in the judgment. I believe that the evidence at trial was sufficient to convict the defendant, Akov Ortiz, of tampering with a witness in violation of General Statutes § 53a-151 (a), not for the reasons stated by the majority, but because the trial evidence permitted the jury reasonably to infer, from the defendant's threatening behavior toward the victim, that he intended to prevent the victim from testifying at trial. I write separately because I believe that by adopting the state's argument in this matter, the majority contributes to broadening the sweep of the tampering statute beyond its clear legislative bounds.

At the outset, I acknowledge that the language of *State* v. *Pommer*, 110 Conn. App. 608, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008), lends support to the majority's view. To the extent that the

---

[10] The defendant also argues that our Supreme Court's decision in *State* v. *Brown*, 299 Conn. 640, 11 A.3d 663 (2011), prevents a finding of waiver in the present case. We disagree. In *Brown*, the state submitted a request to charge that included an instruction on coconspirator liability, but that instruction was omitted from the charge actually given to the jury. Id., 659. In that case, our Supreme Court stated: "Because we have no record of the charging conference or copy of the court's intended charge, we do not know if the trial court expressly rejected the state's proper request to charge, or included the proper instruction in the copy of the charge that it provided to counsel, but inadvertently omitted it from the actual charge to the jury." Id. The present case is distinguishable from *Brown* because the record before us contains a copy of the trial court's proposed instructions. There are no material differences between these proposed instructions and those actually given to the jury. Consequently, *Brown* is inapposite to our analysis.

majority's holding relies on *Pommer*, I respectfully suggest that *Pommer*'s reasoning warrants further consideration. Although *Pommer*, on its face, appears to direct the outcome of this appeal, I do not believe that the *Pommer* court specifically analyzed the defendant's sufficiency claims relating to the statutory terms "witness" and "testimony." In *Pommer*, as in this case, the factual predicate for the tampering charge was an alleged threat by the defendant, intended to keep a witness from talking to the police regarding the defendant's criminal activity. On appeal, the defendant in *Pommer* claimed that, to be sufficient, the tampering evidence had to relate to his interference with the witness' testimony, not to discussions with the police, and that the required intent had to be to prevent a witness from testifying at trial.[1] The defendant claimed, as well, that there was

---

[1] It is noteworthy that our Supreme Court, in *State* v. *Cavallo*, 200 Conn. 664, 513 A.2d 646 (1986), held that the tampering statute is a specific intent statute that requires proof that the defendant specifically intended to affect the testimony of a witness at an official proceeding. In *Cavallo*, the defendant police officer had been dismissed for entertaining and giving liquor to an underage female in his police cruiser. Following his discharge, the defendant told the woman that he was going to seek arbitration, and that, if investigators questioned her, she should tell them that she had never been in his police cruiser. Thereafter, when police questioned the woman, she denied ever having been in the cruiser. Later, the defendant asked that she continue to remain silent about their relationship. Once the defendant commenced arbitration proceedings, however, the woman gave police a full account of her visits with the defendant in his police cruiser, and she also informed them of the defendant's attempts to persuade her to deny these activities. On appeal, the *Cavallo* court held that a defendant is guilty of tampering with a witness "only if he intends that his conduct directly cause[d] a particular witness to testify falsely or to refrain from testifying at all." Id., 672. The court concluded that the evidence was adequate to convince a reasonable fact finder that, "at the time of his attempts to so induce the woman, the defendant had known that an arbitration proceeding would soon be pending and that, during the hearing, the woman would probably be called to testify about her meetings with the defendant in the cruiser. From this evidence, the jury could reasonably have inferred that the defendant intended to induce the woman to testify falsely." Id., 673–74. The holding of *Cavallo* is entirely consistent with my view of the scope of the witness tampering statute. It does not appear, however, to be in harmony with this court's later opinion in *Pommer*.

no evidence that when the alleged inducement was made, he believed that an official proceeding was pending or about to be instituted. *State* v. *Pommer*, supra, 612. The *Pommer* court characterized the defendant's claims as follows: "The defendant argues in effect that a court case actually had to be pending and that the statute's reference to testimony refers necessarily only to testimony under oath at a trial or other official proceeding and that importuning a witness to withhold statements to police prior to trial is not within the prohibition of the statute." Id., 615–16. Although acknowledging that the defendant was claiming both that the evidence was insufficient to demonstrate that he knew an official proceeding was pending or about to be instituted and that tampering had to relate to a person's testimony at such a proceeding, the court concentrated its analysis on the meaning of the terms "an official proceeding is pending" and "about to be instituted." Id., 613. As to the defendant's claim that the intent required under the tampering statute must be to prevent a witness from testifying at trial and that the intent to prevent a witness from speaking to the police is not sufficient, the court responded: "We reject the contention that discouraging the witness from speaking to the police could not suffice when there was evidence that the defendant believed an official proceeding was imminent." Id., 618. The *Pommer* court concluded: "[I]t is enough under the tampering with a witness statute to satisfy the required belief that an official proceeding is 'about to be instituted' and is therefore imminent if a defendant, knowing he has been implicated as a participant in a crime, threatens a likely witness to that crime, to withhold evidence from the police, who, as the [court in *State* v. *Foreshaw*, 214 Conn. 540, 572 A.2d 1006 (1990)] noted, play a crucial role in the commencement of criminal prosecutions." *State* v. *Pommer*, supra, 618. Without further citation

or analysis, the *Pommer* court held that the tampering with a witness statute proscribes tampering with a police investigation.

I have concerns with the *Pommer* court's explicit reliance on *Foreshaw*, as I believe *Foreshaw* must be read in the context of the evidence tampering statute; General Statutes § 53a-155; which, although akin to the witness tampering statute, is not identical to it in the behavior that it proscribes.[2] Although it fairly can be argued that the conduct of a person in destroying or secreting evidence to keep it from police discovery during an investigation invariably compels a necessary

---

[2] In *State* v. *Foreshaw*, supra, 214 Conn. 540, the defendant had been convicted of murder, carrying a pistol without a permit, and tampering with physical evidence in violation of § 53a-155 (a) (1). The evidence tampering charge was based on the state's claim that, after the defendant had shot the victim and fled by motor vehicle, she threw the murder weapon out of her motor vehicle so that the police would not find it. There, the court properly instructed the jury regarding the elements of the offense of tampering with physical evidence, stating: "If you find that the State has proved beyond a reasonable doubt that the defendant did conceal this gun . . . with the purpose of impairing its availability in this trial, or an official proceeding which would be taking place at some later time—if you find that beyond a reasonable doubt, then you can find the defendant guilty of tampering with physical evidence." (Internal quotation marks omitted.) Id., 547–48. On appeal, the defendant claimed that the tampering evidence was insufficient because the trial evidence demonstrated that, at the time she discarded the murder weapon, she had not yet had any contact with law enforcement officers or the judicial system, and, therefore, she could not have believed an official proceeding was about to be instituted. Her instructional and sufficiency claims were interrelated. She argued that the language of the statute, "about to be instituted," connoted temporal proximity between the alleged act and an official proceeding and not one that would be taking place at some future indefinite time. She additionally argued that the evidence would be insufficient even if it could be demonstrated that she had acted with the intent to make the gun unavailable to the police. *State* v. *Foreshaw*, supra, 551. In rejecting the defendant's claims, the court stated: "It is true that at the time the defendant discarded the gun, no official proceeding had in fact been instituted. The statute, however, speaks to that which is readily apt to come into existence or be contemplated and thus plainly applies to the official proceeding arising out of such an incident. The crucial role police involvement would play in that process cannot be disputed." Id. .

inference that the actor intends, as well, for the evidence to be unavailable in any proceeding likely to ensue from the police investigation, a similar inference is not necessarily compelled from the conduct of an actor who asks another not to talk with the police during an investigation. In the latter case, whether asking a person not to talk with the police during an investigation permits a reasonable inference that, by such conduct, the actor has also attempted to influence that person's testimony in an official proceeding likely to ensue will vary depending on the facts and circumstances that pertain. Certainly, one cannot reasonably conclude as a matter of law that such an inference is invariably compelled.

Additionally, in resolving the defendant's claims on appeal, the *Pommer* court did not assess the meaning of the terms "witness" and "withhold testimony"; nor did the court confront the linguistic differences between Connecticut's witness tampering statute and the counterpart statute in the Model Penal Code.

Aside from *Pommer*'s likely misapplication of the language of *Foreshaw* and the majority's reliance on it, the plain language of the witness tampering statute belies the state's claim and the majority's affirmance that the statute proscribes tampering with a police investigation. In this regard, it is useful to compare and contrast the language of Connecticut's witness tampering statute with its counterpart in the Model Penal Code. It has been often said that Connecticut's Penal Code, adopted in 1969, was based, in large part, on the Model Penal Code proposed by the American Law Institute and, accordingly, we look to the Model Penal Code and cases from other jurisdictions that have adopted the Model Penal Code for guidance in understanding like language of the Connecticut Penal Code. See *State* v. *Miranda*, 274 Conn. 727, 761–62, 878 A.2d 1118 (2005); see also *State* v. *Courchesne*, 296 Conn. 622, 671–72,

998 A.2d 1 (2010). Such an approach has particular value when the language of the statute under scrutiny tracks a parallel provision of the Model Penal Code. It is also instructive when the language of a state statute departs in a significant way from the language of a similarly named provision in the Model Penal Code. Such is the case in this instance.

The similarly named provision in the Model Penal Code, § 241.6, is captioned, "Tampering With Witnesses and Informants; Retaliation against Them." In relevant part, § 241.6 states as follows: "(1) Tampering. A person commits an offense if, believing that an official proceeding *or investigation* is pending or about to be instituted, he attempts to induce or otherwise cause a witness *or informant* to: (a) testify *or inform* falsely; or (b) withhold any testimony, *information,* document or thing . . . ." (Emphasis added.) Model Penal Code § 241.6 (1980). As can be readily seen, this language of the Model Penal Code differs from Connecticut's similarly named statute in two fundamental aspects. First, the Model Penal Code provision expressly criminalizes an attempt to induce a person not to cooperate with an investigation while Connecticut's provision contains no such provision. Additionally, the Model Penal Code provision makes it a crime to induce either a witness or an informant, while the Connecticut statute addresses only inducements to witnesses. The reach of the Model Penal Code's tampering section, therefore, is broader than Connecticut's tampering statute. In sum, our statute, unlike the similar Model Penal Code provision, proscribes only inducements to witnesses in their roles as witnesses not to testify in pending or prospective official proceedings, while the Model Penal Code section proscribes behaviors directed toward witnesses and informants and expressly relates to investigations as well as to official proceedings.

Although the state and the majority have effectively conflated the terms "witness" with "informant" and an "official proceeding" with an "investigation," the drafters of the Model Penal Code were well aware of the difference in scope created by the inclusion or omission of such terms. In their comment to § 241.6, the drafters noted that some states' tampering statutes proscribe tampering with informants as well as with witnesses while others focus only on witnesses. Model Penal Code, supra, § 241.6, comment 1, p. 165. By its plain language, our tampering statute falls into the latter category. And, lest there be any doubt regarding the plain meaning of the term "witness" as it applies in the criminal justice context, the term has been given a statutory definition. General Statutes § 53a-146 (6) defines a "witness" as "any person summoned, or who may be summoned, to give testimony in an official proceeding." Additionally, the term "official proceeding" has a statutory definition. An official proceeding is "any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding." General Statutes § 53a-146 (1). Therefore, a person who is asked to cooperate with a police investigation is not, for purposes of the investigation, a witness because an investigation is not an official proceeding.

In their inclusion of the term "investigations" in the proscriptions of the model tampering statute, the drafters of the Model Penal Code were mindful, as well, of the difference between an official proceeding and an investigation. On this point, the commentary states: "The phrase 'official proceeding' is defined in Section 240.0 (4) to mean 'a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency or official authorized to

take evidence under oath, including any referee, hearing examiner, commissioner, notary or other person taking testimony or deposition in connection with any such proceeding'. Section 241.0 (1) applies this definition to the tampering offense. Beyond dealing with corruption of witnesses in official proceedings, a secondary purpose of this provision is to prohibit inducing an informant to inform falsely or to withhold information. The usual context of this concern will be criminal investigations by law enforcement authorities. The word 'investigation,' however, is not strictly limited to police investigations but covers any kind of official investigation by a public servant." Model Penal Code, supra, § 241.6, comment 2, p. 167. The commentary continues: "Although neither 'witness' nor 'informant' is defined in the Model Code, the meaning of these terms is an important determinant of the reach of the tampering offense. Jurisdictions that condemn attempts to influence a 'witness' have found that word a rich source of confusion. Is 'witness' limited to a person under subpoena, or does it also cover one who will be subpoenaed or who may be called to testify? As it is used in Section 241.6, the intent of the word 'witness' does not derive from nice inquiries into the status of the person involved. Rather, the term identifies the function that the defendant seeks to affect. Thus, this subsection condemns attempts to induce or otherwise cause a person to engage in the specified conduct while acting in his capacity as a witness." Id.

Applying the logic of the commentary concerning the term "witness," one may be guilty of attempting to induce a witness only as it applies to that person's capacity as a witness. And, although an informant may also later become a witness in an official proceeding, and one may be guilty of attempting to induce that person to testify in a certain way in a future official proceeding, one should not be found guilty of witness

tampering if the inducement relates only to the informant's relationship to a police investigation. In sum, unlike Connecticut's witness tampering statute, the sweep of the Model Penal Code section on tampering to include informants as well as witnesses and investigations as well as official proceedings, renders criminal the act of inducing an informant not to cooperate with the police in an investigation without regard to whether the inducement relates, as well, to an official proceeding. That meaningful difference in statutory scope was apparently missed by this court in *Pommer* and has now been embraced by the majority in the case at hand.

The distinction between discouraging a person from talking with the police and inducing a witness not to testify at an official proceeding was recognized by the Oregon Supreme Court in *State* v. *Bailey*, 346 Or. 551, 565, 213 P.3d 1240 (2009). Oregon's tampering statute has parallels to Connecticut's. It provides that a person is guilty of witness tampering if: "(a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony; or (b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned." Or. Rev. Stat. § 162.285 (1). In *Bailey*, the defendant had been convicted of tampering with a witness on the basis of evidence that he had made threats to his daughter after she had told him of her intention to report to the police that he was in possession of certain stolen articles. On appeal, the Court of Appeals dispensed with the defendant's claim that, in order to be found guilty under the statute, a proceeding had to be pending at the time of the threat or inducement in the same manner as was dispensed with by the *Pommer* court. As to the defendant's claim that threatening his daughter to

induce her not to talk with the police was insufficient proof of an inducement not to testify at an official proceeding, the Supreme Court noted the sequence of inferences that a jury would have to make in order to find the defendant guilty of tampering: that when he threatened her not to go to the police, he did not want her to inform the police regarding the stolen articles. The court found this to be a reasonable inference. Next, the court observed, the jury would have to infer that, if the daughter went to the police, an investigation would likely ensue. This, too, the court found to be a reasonable inference. Next, the court found, the jury would have to infer that, at the time of his threats, the defendant believed that his daughter likely would be called as a witness in a trial. This inference, as well, the court found the jury could reasonably draw from the evidence. Finally, the court noted, that the jury would have to infer that the threats made by the defendant were intended to induce his daughter not to testify at trial. This last inference, the Oregon Supreme Court found, was too attenuated. Thus, the court concluded, evidence that the defendant threatened his daughter to prevent her from calling the police was, itself, insufficient to prove that the defendant intended, by such an inducement, to keep her from testifying at a trial likely to ensue. *State* v. *Bailey*, supra, 567–68. The court concluded: "We do not suggest that, on other facts and in a different context, a threat made to someone advising her not to report criminal conduct to the police could not be found by a jury to have been made in a knowing attempt also to induce the threatened person to withhold testimony in a future criminal trial. We hold only that, on these facts, that inference could not reasonably be drawn." Id. Thus, Oregon's Supreme Court, in confronting language parallel to our tampering statute, has held that, for criminal liability, the evidence of tampering must support an inference that the actor intended

for the witness not to testify and that threatening one not to go to the police is not enough, by itself, to span the evidentiary gap between talking with the police and testifying at an official proceeding.

Similarly, I believe that, in order to be found guilty under Connecticut's witness tampering statute, the evidence, and reasonable inferences to be drawn from it, must support a finding that a defendant sought to prevent a witness from testifying.[3] As in *Bailey*, and notwithstanding the broad language of *Pommer*, not every circumstance in which a defendant attempts to induce a person not to talk with the police will support such a conviction. Rather, the state should be required to prove, either by direct or circumstantial evidence, that by inducing a person not to talk with the police a defendant has also sought to induce that person not to be a witness in an official proceeding. Perhaps buoyed by the breadth of *Pommer*'s language, the state believes that, in order to convict a defendant of witness tampering, it need not make the connection between not cooperating in a police investigation and not testifying at an official proceeding.

In making its argument, the state equates a police investigation with an official proceeding. Doing so, the state ignores the plain language of the statute. And as a result of the majority's acceptance of the state's argument, a person who simply asks another person not to talk with the police during an investigation when the actor knows an official proceeding is going to be instituted may now be found guilty of tampering with a witness without regard to whether the actor further

---

[3] In making this point, I am not suggesting that inducing a person not to talk with the police during an investigation is benign behavior or reflects good citizenship. My point, rather, is that our witness tampering statute, as presently written, does not proscribe such behavior unless the inducement is done in a manner to implicate other provisions of our Penal Code. To the extent that my point reveals a shortcoming in our witness tampering statute, I believe the solution should come from the General Assembly and not by judicial legislation.

intends for the witness not to testify at trial. In reaching its conclusion, relying solely on *Pommer*, which, in turn, relied solely on *Foreshaw*, the majority has acceded in *Pommer*'s expansion of the scope of Connecticut's witness tampering statute beyond its legislative bounds.

Notwithstanding my concerns with *Pommer*, I believe that, in this case, the jury reasonably could have determined, from the evidence and allowable inferences, that the defendant believed that a proceeding was "about to be instituted" and that the jury could reasonably have inferred in this instance that the defendant's inducement to the witness not to talk with the police was, as well, an attempt to induce her not to testify at trial—the "official proceeding" that would follow his arrest. The jury could reasonably have come to this conclusion based on the court's recitation of the statute's proscriptions as well as the court's more general charge on circumstantial evidence and, in particular, the right of the jury to draw reasonable inferences from proven facts. Because, in this case, I believe that such an inference could reasonably be drawn from the evidence, I agree with the result of this appeal. I believe, however, that, unlike the evidence tampering situation, such an inference is neither mandatory nor invariably appropriate in every circumstance, and that if it should be criminal behavior for a person who believes he is likely to be arrested to ask a person, without threat or coercion, not to participate in a police investigation, such behavior should be criminalized by statute and not by ignoring the plain limits of the statute's reach. Accordingly, I respectfully concur.